IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CINCINNATI SPECIALTY | § | |
| UNDERWRITERS INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:20-CV-0606-D |
| VS. | § | |
| | § | |
| HENRY Z ROOFING, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Cincinnati Specialty Underwriters Insurance Company ("Cincinnati") brings this declaratory judgment action against defendants Ruth and Clinton Gantt (collectively, the "Gantts"), Henry Z Roofing, LLC ("HZR"), Henry Zrubek d/b/a Henry "Z" Roofing ("Zrubek"), and Safeco Insurance Company of Indiana ("Safeco"). The Gantts move to dismiss, contending that the court should not exercise its jurisdiction to issue a declaratory judgment. The Gantts also request reimbursement of costs and fees under Fed. R. Civ. P. 11. For the reasons explained, the court denies the motion to dismiss and denies the request for Rule 11 sanctions.

I

Cincinnati issued a commercial general liability policy to HZR. On June 1, 2018 the Gantts sued HZR, Zrubek, Safeco (the Gantts's homeowners' insurer), and Safeco's adjuster, Benjy Tarquino ("Tarquino"), in state court for damages related to the alleged destruction

of the Gantts's residence by fire on December 15, 2017.  In the state court action, the Gantts brought claims for negligence and under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), alleging, in pertinent part, that HZR caused the fire by using a torch to heat tar while repairing the roof and that HZR did not possess a fire extinguisher on the premises while using the torch.  The Gantts also brought, *inter alia*, claims for breach of contract and DTPA violations against Safeco and Tarquino.  Safeco and Tarquino were dismissed with prejudice from the suit on October 22, 2019.  On September 12, 2019 Safeco sued HZR in state court seeking subrogation from HZR for funds paid to Mr. Gantt related to the fire damage.

HZR and Zrubek tendered both lawsuits to Cincinnati for defense and indemnity.  Cincinnati is currently defending HZR and Zrubek under a reservation of rights.  On March 10, 2020 Cincinnati filed the instant declaratory action.  Cincinnati seeks a declaratory judgment that it owes no duty to defend or indemnify HZR and Zrubek in the underlying state court actions based on the "Roof Limitation Endorsement."  This endorsement purports to preclude coverage for hot tar or heat application work when the insured fails to maintain a fire extinguisher at the job site.  The Gantts move to dismiss, and, in their reply, seek reimbursement for costs and fees under Rule 11.  Cincinnati opposes the motion.

II

The court addresses first the Gantts's request for reimbursement of costs and fees under Rule 11.  The Gantts base this request on allegations that Cincinnati failed to file a notice of related cases, engaged in forum shopping, made misrepresentations to the court, and

filed the declaratory judgment action in bad faith.

A

The Gantts Rule 11-based request for reimbursement of costs and fees is procedurally defective in at least two respects.

First, Rule 11(c)(2) provides that "[a] motion for sanctions must be made separately from any other motion[.]"  The Gantts have not filed a separate Rule 11 motion, but have instead made their request for Rule 11 sanctions in their reply brief.  Such a request is therefore not "viable."  *Flores v. Sch. Bd.*, 116 Fed. Appx. 504, 512 (5th Cir. 2004) (per curiam) (holding that plaintiff "never filed a viable Rule 11 motion" because Rule 11 requires a separate motion and does not permit "inclu[sion] . . . in another motion or request").

Second, Rule 11(c)(2) provides that "[t]he motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  *See* Rule 11 advisory committee's note (1993 Amendments) (discussing "safe harbor" provision of Rule 11(c)(2)).  The Gantts have not established that they served the motion and waited for the "safe harbor" period to elapse before filing their motion.  These procedural deficiencies preclude Rule 11 relief, and the court denies their request on this basis alone.  *See Brocq v. Lane*, 2017 WL 1281129, at *5 (N.D. Tex. Apr. 6, 2017) (Fitzwater, J.) (denying procedurally defective Rule 11 request).

B

Even if the Gantts had complied with the procedural requirements of Rule 11, the court would deny the motion on the merits.  The Gantts base their request, in part, on Cincinnati's alleged violation of N.D. Tex. Civ. R. 3.3(a), which requires plaintiffs to file a "notice of related case," along with the complaint, when there is a related case, as defined by Rule 3.3(b).  Because Cincinnati did not file this notice, the Gantts appear to contend that the case should be dismissed and that they are entitled to reimbursement of costs and fees under Rule 11.  The court disagrees.

As Rule 3.3(c) makes clear, the *only* effect of failing to file a notice of related case is that the plaintiff "certifies that there is no related case, as defined in LR 3.3(b), to the case being filed[.]"  Rule 3.3(c).  In other words, Rule 3.3 does not provide for the imposition of sanctions when a plaintiff fails to comply with the requirement to file a notice of related case. Thus even if the court assumes *arguendo* that a notice of related cases was required, neither dismissal nor reimbursement of costs and fees would be warranted.  This is especially the case here where Cincinnati explicitly mentioned both pending state court actions in its complaint and made no attempt to conceal their existence.

Moreover, to the extent the Gantts contend that sanctions are warranted because Cincinnati engaged in impermissible "forum shopping" or filed a frivolous lawsuit, Ds. Reply 2, these arguments lack merit.  As explained *infra* at § V(B)(2), seeking a declaratory judgment in federal court while a related case is pending in state court does not of itself constitute impermissible forum shopping.  Accordingly, the Gantts's motion for Rule 11

sanctions is denied on the merits as well.

III

The court now considers the Gantts's motion to dismiss based on the federal abstention doctrine.

Federal courts have broad discretion over whether to issue a declaratory judgment. *See, e.g., Evanston Ins. Co. v. Tonmar, L.P.*, 669 F.Supp.2d 725, 732 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Act "gives federal courts the competence to declare rights, but it does not impose a duty to do so." *Evanston Ins. Co.*, 669 F.Supp.2d at 732 (citing *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)). Although "the district court's discretion is broad, it is not unfettered." *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993). The court cannot dismiss a declaratory judgment action "on the basis of whim or personal disinclination." *Id.* (quoting *Rowan Cos. v. Griffin*, 876 F.2d 26, 28-29 (5th Cir. 1989)).

In considering whether to abstain or decide a declaratory judgment action, the court must determine (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) how to exercise its broad discretion to decide or dismiss the action. *E.g., Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

- 5 -

IV

The court considers whether the declaratory action in this case is justiciable and whether the court has authority to grant declaratory relief.

A

"Justiciability in the declaratory judgment context is typically an issue of ripeness, i.e., whether an actual controversy exists." *Cont'l Ins. Co. v. Gifford-Hill & Co.*, 2013 WL 1875930, at *2 (N.D. Tex. May 6, 2013) (Fitzwater, C.J.). The question whether Cincinnati has a duty to *defend* presents an actual controversy and is justiciable because its insureds, HZR and Zrubek, are currently facing lawsuits. *See Northfield Ins. Co. v. Women & Children's Res. Ctr., Inc.*, 116 F.3d 476, 1997 WL 255661, at *1 (5th Cir. Apr. 15, 1997) (per curiam) ("A complaint requesting a declaration of an insurer's duty to defend a pending liability lawsuit presents a justiciable controversy."); *see also Cont'l Ins. Co.*, 2013 WL 1875930, at *2 (holding that there was justiciable controversy where insurer sought duty to defend and insureds were facing lawsuits). In contrast, the question whether Cincinnati owes a duty to *indemnify* is not necessarily ripe[1] until the underlying tort suits conclude. This is because the duty to *indemnify*, unlike the duty to *defend*, "is determined by the facts actually established in the underlying lawsuit." *Cont'l Ins. Co.*, 2013 WL 1875930, at *2 (citation omitted). For this reason, questions regarding indemnity coverage are "ordinarily not justiciable until after the underlying lawsuit is resolved because coverage may turn on facts

---

[1]*But see infra* note 2 concerning a rule under which the duty to *indemnify* could be ripe.

- 6 -

that are proven, even if those facts were not pled." *Id.* Accordingly, the court concludes that the declaratory action as to the duty to *defend*—but not as to the duty to *indemnify*—is justiciable. Because the issue of Cincinnati's duty to *indemnify* is not yet ripe, the court will defer any ruling on the duty to *indemnify* until the underlying state court actions are resolved.[2]

B

As to the court's authority to grant declaratory relief, the court has such authority when—as here—it has diversity jurisdiction.[3] *E.g., Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir.2003) (holding that district court properly concluded that it had authority to decide declaratory judgment suit where there was diversity jurisdiction).[4]

---

[2]This conclusion is subject to the rule that "when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify," the insurer can obtain a prejudgment declaration that it owes no duty to defend and can also obtain a declaration regarding the duty to indemnify. *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis omitted). Because it is too early to conclude that Cincinnati will be unable to defeat a duty to indemnify based on this rule, the court declines at this time to dismiss this component of Cincinnati's suit.

[3]Cincinnati pleads—and the Gantts do not challenge—complete diversity. Cincinnati alleges that it is a Delaware corporation with its principal place of business in Ohio; HZR is a limited liability company in which all members are Texas citizens; Safeco is an Indiana corporation with its principal place of business in Indiana; and the Gantts are Texas citizens.

[4]Mandatory abstention does not deprive the court of its authority to grant declaratory relief in this case. Under the second *Orix* element, "a district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those involved in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under section 2283 [of the Anti–Injunction Act]." *Sherwin-Williams Co.*, 343 F.3d at 388 n.1 (citing *Travelers Ins.*, 996 F.2d at 776). "The absence of any of the

- 7 -

V

The court turns now to the question whether, in its discretion, it should abstain from adjudicating Cincinnati's declaratory judgment action.

A

When considering whether to dismiss or stay a declaratory judgment action while parallel state court proceedings are pending, a district court must "ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). There are three key aspects of this analysis—fairness, federalism, and efficiency—that are guided by several nonexclusive factors. *See Sherwin-Williams Co.*, 343 F.3d at 388, 390-92 (interpreting factors set out in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)). These factors are:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

---

three factors defeats mandatory abstention[.]" *Smith v. McLean*, 2011 WL 2792387, at *5 (S.D. Tex. July 14, 2011) (quoting *Sealed v. Sealed*, 33 F.3d 1379, 1994 WL 487245, at *2 (5th Cir. Apr. 18, 1994) (unpublished)). Here, at the very least, the third factor is not met because Cincinnati is not a party to either state court action. *See Sherwin-Williams Co.*, 343 F.3d at 387 (holding that the third factor is not met where "[d]iversity jurisdiction was present and the Anti-Injunction Act did not apply because there was no pending state court action between [plaintiff] and any of the declaratory judgment defendants.").

(5) whether the federal court is a convenient forum for the parties and the witnesses;
(6) whether retaining the lawsuit would serve the purposes of judicial economy; and
(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id.* at 388 (quoting *Trejo*, 39 F.3d at 590-91).

B

1

The court begins with the first factor—whether there is a pending state action in which all of the matters in controversy may be fully litigated. Under this factor, the court considers whether "another [parallel] suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. When a pending state proceeding is not actually "'parallel' because it does not involve all the same parties or issues," the court should consider "the extent of similarity." *Sherwin-Williams Co.*, 343 F.3d at 394 n.5.

The court concludes that the matters involved in the present action will not be fully litigated in the underlying Texas proceedings because Cincinnati is not a party to either state court suit and the issues to be litigated are not the same. In fact, Cincinnati *cannot* be joined as a party to either state court action. *See* Tex. R. Civ. P. 51(b) (prohibiting joinder of an insurance company by an injured third party in a tort action except where the insurer is liable by statute or contract to the person injured); *see also Nautilus Ins. Co. v. Nicky & Claire's*

- 9 -

*Day Care, Inc.*, 2009 WL 10669371, at *5 (W.D. Tex. Aug. 13, 2009) (explaining that "it is unclear whether all of the matters in controversy may be litigated in the pending state court action," even when liability insurer was joined to the state suit, because "the declaratory judgment action against [liability insurer] could be dismissed" under Rule 51(b)).

Under Texas law, Cincinnati's duty to defend arises from the "'eight-corners' . . . [of] the third-party plaintiff's pleadings and the provisions of the policy[.]" *Trammell Crow Residential Co. v. Va. Sur. Co.*, 643 F.Supp.2d 844, 849 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). "Because the 'eight corners' rule will apply, this case presents a discrete contract issue separate from the tort . . . issues in controversy in the" underlying proceedings. *State Farm Lloyds v. Weatherford Compounding Pharm., LLC*, 2017 WL 8896192, at *5 (W.D. Tex. Nov. 28, 2017), *rec. adopted*, 2018 WL 1905115 (W.D. Tex. Feb. 15, 2018). In other words, "this court's ruling as to [Cincinnati's] [contractual] obligations has no direct bearing on the underlying state case[s]," which will address the merits of the Gantts's and Safeco's claims, "and the state court's ruling on [HZR's] and [Zrubek's] liability has no direct bearing on [Cincinnati's] obligations" regarding its duty to defend.[5] *Nautilus Ins. Co. v. S. Vanguard Ins. Co.*, 899 F.Supp.2d 538, 551 (N.D. Tex. 2012) (Lindsay, J.); *see also Atl. Cas. Ins. Co. v. Bustos-Bustos*, 2016 WL 5794960, at *4 (N.D. Tex. Aug. 31, 2016) (Horan, J.) (holding

---

[5]Undoubtedly, the state court's findings will be determinative as to Cincinnati's duty to *indemnify*. But because the court will defer its decision on Cincinnati's duty to *indemnify* until the state court proceedings are concluded, *but see supra* note 2, the state court's future rulings present no barrier to this court's adjudication of Cincinnati's duty to *defend*.

that the first factor of the *Trejo* analysis weighed against abatement where determining insurer's duty to defend would not reach the merits of the underlying lawsuit), *rec. adopted*, 2016 WL 5791625 (N.D. Tex. Oct. 4, 2016) (Lindsay, J.).  Because the parties and issues are not the same, the first factor weighs against abstention.

2

As to the second and third factors, the Fifth Circuit has clarified that they address "improper and abusive" litigation practices.  *Sherwin-Williams Co.,* 343 F.3d at 391.  Forum shopping may constitute such an improper litigation practice "where the federal action would change the applicable law." *AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 Fed. Appx. 316, 321 (5th Cir. 2006) (per curiam).  On the other hand, "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of [a] state court [ruling], is not in itself improper[.]" *Sherwin-Williams Co.*, 343 F.3d at 391.  And "without more, [the court] cannot say that [the declaratory plaintiff's] action is an instance of forum-shopping instead of a reasonable assertion of its rights under the declaratory judgment statute and diversity jurisdiction." *Id.* at 398 (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998)).  Here, Cincinnati filed the instant lawsuit based on diversity jurisdiction *after* the state court suits were filed, and the declaratory judgment action will apply Texas law.  These factors weigh against abstention.

3

The fourth and fifth factors consider possible inequities in allowing Cincinnati to gain precedence in time or to change forums, and whether this court is a convenient forum for the

- 11 -

parties and the witnesses. *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir. 1988) ("[T]he inconvenience factor primarily involves the physical proximity of the federal forum to the evidence and witnesses."). Here, Cincinnati will not gain precedence if this case continues, and this court—i.e., the Northern District of Texas, the district in which the Gantts reside—is a convenient forum. Additionally, as explained, "a duty to defend issue may be decided solely by examining the insurance policy and pleadings in the underlying litigation," and "extrinsic evidence (i.e. witness testimony) is generally prohibited." *State Farm Lloyds*, 2017 WL 8896192, at *6. Because the Gantts reside within this district and are unlikely to need witnesses who may live elsewhere, these factors weigh against abstention.

4

Considering judicial economy under the sixth factor, the court concludes that this federal litigation is not unduly burdensome on top of the state court litigation. Although the state court proceedings, which were filed first, are already underway, this proceeding is not duplicative. *See, e.g., AXA Re Prop. & Cas. Ins. Co.*, 162 Fed. Appx. at 321 ("[J]udicial economy is not contravened by retaining the action because no other proceeding is able to consider the coverage dispute; again, [Cincinnati] is not a party to the [Texas state court] litigation."). Cincinnati's "duty to defend is not in issue in the [s]tate [c]ourt [l]itigation and this Court may rule upon the duty to defend at this time. . . . Therefore, duplicative work will not result from this Court exercising jurisdiction in this case." *State Farm Lloyds*, 2017 WL 8896192, at *6. Because this court will determine an issue not reached by the state court, this factor weights against abstention.

5

The seventh factor also weighs against abstention. The court is not being asked to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

C

Having determined that all *Trejo* factors weigh against abstention, the court declines to dismiss the case.  The overarching *Brillhart* concerns—federalism, fairness, and efficiency—support this result.  This court's ruling will not reach the merits of claims raised in the underlying state court actions and will not conflict with any future state court ruling on the matters raised therein.  Nevertheless, subject to the rule addressed *supra* at note 2, because Cincinnati's duty to indemnify will turn on matters addressed in the underlying state-court proceedings, the court defers its adjudication of the duty to indemnify until those proceedings are concluded.

\*   \*   \*

For the reasons explained, the court denies the Gantts's motion to dismiss and motion for Rule 11 sanctions.

**SO ORDERED**.

May 26, 2020.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 13 -